A02A1843. HOPSON v. BANK OF NORTH GEORGIA.
(574 SE2d 411)

JOHNSON, Presiding Judge.

Thomas R. Hopson, Jr. appeals from the trial court's order granting Bank of North Georgia a writ of possession in Hopson's interest in a limited liability corporation. For reasons that follow, we affirm the trial court's order.

On October 7, 1997, Bank of North Georgia loaned $300,000 to RCI Housing Partners I, a Georgia limited liability company in which Hopson has an interest. The bank required Hopson to personally guarantee this loan. The bank also required Hopson to sign a security agreement, whereby he assigned all of his "right, title and interest as a Member in and to Nine Arbor Partners," a Georgia limited liability company, to Bank of North Georgia.

On March 13, 1998, Bank of North Georgia loaned an additional $732,000 to Hopson and Ronald Curry, the other member of RCI Housing Partners. Once again, Hopson signed a secured promissory note conveying an interest in all of his "right, title and interest as a Member in and to Nine Arbor Partners" to Bank of North Georgia. On March 17, 2000, Bank of North Georgia loaned an additional

---

[13] Id. at 738.
[14] Id. at 738-739.

$275,000 to Hopson and Curry. Contemporaneous with the execution of this promissory note, Hopson executed a modification of the March 13, 1998 security agreement, whereby he agreed that the indebtedness represented by the March 17, 2000 promissory note would also be secured by the March 13, 1998 security agreement.

RCI Housing Partners defaulted on the loans, and Bank of North Georgia sought to foreclose on its security interest in Nine Arbor Partners. Hopson argued that the Nine Arbor Partners' Operating Agreement required that an interest in the limited liability company could not be transferred without the prior written consent of all of its members. According to Hopson, because Bank of North Georgia had failed to obtain all of these consents, it had no security interest in the limited liability company and therefore no right to foreclose. The trial court disagreed, granting Bank of North Georgia's petition to foreclose and issuing a writ of possession to the bank.

Hopson appeals, arguing that Article XI of the Nine Arbor Partners' Operating Agreement prohibited him from transferring any interest in the limited liability company without the unanimous prior consent of the other members. It is undisputed that Bank of North Georgia did not receive the written consent of all the members of Nine Arbor Partners. However, Hopson's construction of this provision is inaccurate. Article XI of the Nine Arbor Partners' Operating Agreement provides as follows:

11.01 *General.* Except as otherwise specifically provided herein, neither a Member nor an Economic Interest Owner shall have the right to: a) sell, assign, pledge, hypothecate, transfer, exchange or otherwise transfer for consideration, (collectively, "Sale"). . . . 11.02 *Transferee Not Member in Absence of Unanimous Consent.* (a) Notwithstanding anything contained herein to the contrary, if all of the remaining Members do not approve by unanimous written consent the proposed Sale or Gift of the Transferring Member's Membership Interest or Economic Interest to a transferee or donee which is not a Member immediately prior to the Sale or Gift, then the proposed transferee or donee shall have no right to participate in the management of the business and affairs of the Company or to become a Member. The transferee or donee shall be merely an Economic Interest Owner. No transfer of a Member's interest in the Company (including any transfer of the Economic Interest or any other transfer which has not been approved by unanimous written consent of the Members) shall be effective unless and until written notice . . . has been provided to the Company and the non-transferring Member.

Nothing in this Article prohibits a member from transferring his interest in the company without the consent of the other members. In fact, the operating agreement specifically allows for such a transfer on the condition that upon such a transfer, the transferee's interest is limited to a nonmanagement, purely economic, role.

Without citation to any authority, Hopson claims it would be unfair to allow Bank of North Georgia to take less (an economic interest) than what Hopson pledged and warranted he could transfer (his entire interest) at the time the loans were made because to do so would "greatly devalue" the collateral. However, by the express terms of the security agreements, Bank of North Georgia took only an economic interest. The Nine Arbor Partners' Operating Agreement was attached and expressly made a part of the security agreements. Therefore, the conveyance of the security interest contained in the security agreements must be read and interpreted in conjunction with the operating agreement, and the operating agreement limited Bank of North Georgia's interest to only an economic interest.

Hopson also contends that Bank of North Georgia is precluded from arguing that unanimous written consent was not necessary because its security agreement included a provision for Hopson

> [t]o obtain, on or before October 21, 1997, all consents, in a form acceptable to the Secured Party in its sole discretion, required under the [Nine Arbor Partners'] Operating Agreement to authorize Debtor's execution of this instrument and the conveyance of the security interest. . . . Such consents shall include, but not be limited to, the consents of all limited partners and general partners of [Nine Arbor Partners]. . . .

This argument lacks merit. The clear language of the Nine Arbor Partners' Operating Agreement states that if the transferring member cannot obtain the consent of all the members, the transferee merely takes an "economic interest" in the company, as opposed to an entire membership interest, which is defined to include both the member's economic interest in the company, as well as his right to vote and participate in the management of the business and affairs of the company. While Bank of North Georgia may have desired or required the written consent of all the members of Nine Arbor Partners as part of its security agreement, the failure to obtain these consents does not preclude Bank of North Georgia from foreclosing on an interest it rightfully obtained.

Although Bank of North Georgia took only an "economic interest" in the company, it was an interest on which it was entitled to foreclose. This interpretation is in accordance with the Georgia Lim-

ited Liability Company Act, OCGA §§ 14-11-101 (13) (defining "limited liability company interest" to mean a member's share of the profits and losses of the company); 14-11-502 (assignment of limited liability company interest); 14-11-503 (rights of assignee to become member); and 14-11-601 (events of dissociation). The trial court did not err in granting Bank of North Georgia's petition to foreclose and issuing the writ of possession.

*Judgment affirmed. Blackburn, C. J., and Miller, J., concur.*

DECIDED NOVEMBER 14, 2002.

*Speckhals & Cora, Trent B. Speckhals, Hector R. Cora,* for appellant.

*Dreger & McClelland, Richard J. Dreger, Hasty, Pope. & Ball, Jonathan A. Pope,* for appellee.